## The Abercorn.

### (*District Court, D. Oregon.* March 25, 1886.)

PILOTAGE ON COLUMBIA RIVER—RIGHT OF MASTER TO CHOOSE PILOT.

The Columbia river is the boundary between two states, (Oregon and Washington,) within the purpose and spirit of section 4236 of the Revised Statutes, and therefore the state of Oregon cannot require a vessel bound in or out of said river to take an Oregon pilot, or pay him half or any pilotage, if the master thereof prefers to and does take a Washington pilot.

In Admiralty.
*Raleigh Stott*, for libelant.
*Henry Ach*, for respondent.

DEADY, J. This suit was commenced on December 26, 1885, to recover the sum of $176 for half pilotage. It was heard on February 15th, on an exception to the answer, and the decision has since been delayed to suit the convenience of counsel. It is alleged in the libel that the libelant, J. E. Campbell, is, and since prior to October 19, 1885, has been, a duly-licensed pilot, under the law of Oregon and the United States, for the Columbia river bar, attached to the pilot-boat Governor Moody; and that on or about said October 19th he piloted the British bark Abercorn from the sea over the bar to Astoria; that afterwards, and before the commencement of this suit, said vessel was lying at Astoria, drawing 20 feet of water, and bound out to sea, when the libelant offered his services to the master to pilot her over the bar, which offer was refused, and said vessel is going to sea with a pilot other than one belonging to said boat, wherefore the libelant is entitled to recover the value of the services so tendered and refused, namely, the sum of $176. The answer of James Laidlaw, the agent

of the owners, substantially admits the allegation of the libel, and as a defense thereto alleges that at and before the tender of pilot service by the libelant the master of the Abercorn had employed Alexander Malcolm, who was a duly-licensed pilot under the law of Washington and the United States, to pilot said vessel to sea; and that said Alexander Malcolm did thereafter so pilot the same, for which he was duly paid by said master. The libelant excepts to this defense as irrelevant.

By the Oregon pilot act of October 20, 1882, the pilot commissioners for the Columbia river and bar may license as many bar pilots as they may deem necessary; and such pilots must keep a seaworthy boat, of a certain tonnage, on the pilot ground. Sess. Laws, 19. Section 33 of the act provides that "a pilot who brings a vessel in over the Columbia river bar is entitled to pilot her to the sea, when next she leaves the river;" but the commissioners may allow the master to take another pilot from the same boat. The object of this section was to reward a pilot for cruising off shore for vessels bound into the river, by giving him the exclusive right to the comparatively easy and lucrative service of taking a vessel out that he had been to the trouble of finding and bringing in. And by section 30 of the act (Sess. Laws, 20) it is provided that if such pilot's offer of service is declined by the master, he shall pay him half pilotage. A claim for pilotage on such grounds may be enforced in the admiralty, either against the master or the vessel. *The Glenearne*, 7 Sawy. 202; S. C. 7 Fed. Rep. 604.

By section 21 of the act of February 18, 1885, (Sess. Laws, 35,) the pilot commissioners were required to build a pilot-boat at the expense of the state for the use of the bar pilots licensed by them, which it is well understood has been done, and that the vessel mentioned in the libel as the Governor Moody, to which the libelant is attached, is the boat. The object of this legislation, so far as appears, was to deprive the tug-boats at the mouth of the river of the privilege of carrying bar pilots, or being in any way engaged in the pilot service. The result is so well known that it may be mentioned here as a fact. The pilots connected with the tugs have taken out licenses as bar pilots under the law of Washington, and are piloting vessels over the bar in connection with the towage service. Hence this controversy. The pilot Malcolm is a Washington pilot, and doubtless cruises on one of the tugs, and when he piloted the Abercorn to sea he did so as what may be called a tug-pilot in contradistinction to a schooner pilot. Congress having the power to regulate commerce, may regulate pilotage as a matter pertaining thereto, on the navigable waters of the United States; but until congress exercises such power the state may make such regulations. *The Glenearne*, 7 Sawy. 202; S. C. 7 Fed. Rep. 604.

By the act of March 2, 1837, (5 St. 153; section 4236, Rev. St.,) congress provided that "the master of any vessel coming into or going

out of any port situate upon waters which are the boundary between two states, may employ any pilot duly licensed or authorized by the laws of either of the states bounded on such waters to pilot the vessel to or from such port." It is well known that this act grew out of the "pilot war" between New York and New Jersey, in which each state undertook to secure its pilots some exclusive privilege or advantage on the pilot ground in and about the mouth of the Hudson. In the case of *The Panama*, Deady, 31, this court held that the Territory of Washington is a "state," within the purpose and spirit of this legislation; and this ruling was followed in *The Ullock*, 9 Sawy. 641; S. C. 19 Fed. Rep. 207.

Assuming, then, that this section 4236 of the Revised Statutes is applicable to pilotage on the Columbia river, the boundary between Oregon and Washington, this suit cannot be maintained. As between the Oregon pilots, doubtless, the regulation compelling the master of a vessel to take the pilot out of the river that brought him in is valid and binding; but the state cannot compel a vessel in the Columbia river to take an Oregon pilot under any circumstances, or to pay him half or any pilotage, if the master prefers to and does take a Washington pilot. The matter is too plain for argument, and only needs to be stated to be understood. The act of congress is paramount, and no regulation of the state can impair or limit its operation. As applied to the facts and circumstances of this case, it declares, in effect, that the master of any vessel, whether bound in or out of the Columbia river, may take a pilot from either Oregon or Washington, without any reference to the fact of which offered his services first, or whether either of them had served as pilot on the vessel before.

The libel is dismissed, and the respondent is entitled to a decree for costs and disbursements.